In re PIONEER INVESTMENT SERVICES COMPANY a/k/a Premiere Restaurant Investment Company, Debtor.

Bankruptcy No. 3–89–01058.

United States Bankruptcy Court,
E.D. Tennessee.

Oct. 10, 1989.

---

Milgrim, Thomajan & Lee, P.C., Marc E. Richards, New York City, for Clinton Associates Ltd. Partnership, West Knoxville Associates Ltd. Partnership, Brunswick Associates Ltd. Partnership, and Ft. Oglethorpe Associates Ltd. Partnership.

Dearborn & Ewing, Craig J. Donaldson, Nashville, Tenn., for debtor.

Walker & Walker, P.C., John A. Walker, Jr., Knoxville, Tenn., for Committee of Unsecured Creditors.

## MEMORANDUM ON MOTION TO EXTEND TIME TO FILE PROOFS OF CLAIM OR TO ALLOW FILING OF PROOFS OF CLAIM NUNC PRO TUNC

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The court has before it a motion filed August 23, 1989, by four unsecured creditors, Clinton Associates Limited Partnership, West Knoxville Associates Limited Partnership, Brunswick Associates Limited Partnership, and Ft. Oglethorpe Associates Limited Partnership (Clinton, West Knoxville, Brunswick, and Ft. Oglethorpe or, collectively, the Partnerships). By their motion, the Partnerships seek an order extending the bar date for filing proofs of claim. Alternatively, the Partnerships request the court to allow the filing of their claims nunc pro tunc as of the claims bar date. The debtor opposes the relief sought by the Partnerships. The committee of unsecured creditors advised the court by a letter from its counsel received September 19, 1989, that it takes no position on the motion.

In its resolution of the issues, the court has considered supporting affidavits filed by the Partnerships together with oral testimony introduced at a hearing held September 14, 1989.[1] Additionally, the court

---

1. Fed.R.Civ.P. 43, incorporated into Fed.R. Bankr.P. 9017, provides in material part:

 **(e) Evidence on Motions.** When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard

takes judicial notice of material facts of record in the debtor's bankruptcy case file.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A) and (0) (West Supp.1989).

### I

The debtor filed its voluntary petition under Chapter 11 of title 11 of the United States Code on April 12, 1989. Contemporaneously therewith it filed a list of its twenty largest unsecured creditors. Included within this list are Clinton, West Knoxville, and Brunswick. The debtor requested and was granted extensions through May 17, 1989, within which to file its statement of affairs and schedules.

On April 13, 1989, a Notice For Meeting Of Creditors (Notice) was mailed by the clerk's office to parties in interest fixing May 5, 1989, as the date for the creditors' meeting required under Bankruptcy Code § 341(a). This Notice also fixed August 3, 1989, as the bar date for filing proofs of claim. Concerning the claims bar date, the Notice provides:

> You must file a proof of claim if your claim is scheduled as disputed, contingent or unliquidated, is unlisted or you do not agree with the amount. See 11 USC Sec 1111 & Bankruptcy rule 3003. Bar date is August 3, 1989.

Mark A. Berlin, president of Robriste Enterprises, Inc., general partner of Clinton, West Knoxville, and Brunswick, and president of Pudding Enterprises, Inc., general partner of Ft. Oglethorpe, received and read the April 13, 1989 Notice.[2] The Partnerships do not dispute the timely receipt of the Notice by Mr. Berlin nor do they dispute that Clinton, West Knoxville, and Brunswick had notice of the filing of the debtor's Chapter 11 petition. Ft. Oglethorpe, however, contends that it did not receive the April 13, 1989 Notice and that it did not, therefore, have notice of the August 3, 1989 claims bar date.

Mr. Berlin attended and participated in the May 5, 1989 meeting of creditors.[3] He also attended adjourned meetings of creditors held May 19 and June 16, 1989. The Proceeding Memo filed by the United States Trustee subsequent to the May 19, 1989 creditors meeting evidences that Mr. Berlin entered an appearance in behalf of each of the Partnerships. The June 16, 1989 adjourned meeting was attended by Mr. Berlin and the Partnerships' attorney, Marc Richards.[4]

The debtor filed its statement of financial affairs and schedules on May 18, 1989. The Partnerships are not listed on the schedules as originally filed. However, on May 25, 1989, the debtor amended its schedules to include Clinton, West Knoxville, and Brunswick as creditors holding contingent, unliquidated, and disputed

---

wholly or partly on oral testimony or deposition.

**2.** Mr. Berlin is engaged in the business of real estate and financial management. He is an attorney licensed to practice in Florida and New York and is also a certified public accountant. He testified that he read the Notice upon receipt, but that he has no familiarity with bankruptcy law.

**3.** The record is unclear as to whether the May 5, 1989 meeting of creditors was actually held. A "Notice Of Rescheduling Of Meeting Of Creditors" dated May 3, 1989, was filed by the debtor's attorneys on May 5, 1989. This notice reflects a rescheduling of the May 5 meeting to May 19, 1989. However, Mr. Berlin in an affidavit accompanying the Partnerships' motion states:

> I attended the first scheduled 341(a) meeting in Knoxville on May 5. I participated in the examination of the debtor and noted for

the record, along with the U.S. Trustee, the futility of continuing the Debtor's examination in light of the incompleteness of the Debtor's schedules and statement of affairs.... The Section 341(a) meeting was adjourned by the U.S. Trustee until June 16, 1989.

Although the United States Trustee did not file a Proceeding Memo evidencing the conduct of a meeting of creditors on May 5, 1989, the court concludes from Mr. Berlin's affidavit that a meeting was held.

**4.** According to the Proceeding Memo filed by the United States Trustee, Mr. Richards' appearance at the June 16, 1989 adjourned meeting was entered on behalf of Clinton. Mr. Richards also filed a written "Notice Of Appearance And Request To Receive Notices" with the clerk's office on June 19, 1989, confirming his representation of Clinton. Affidavits filed by Berlin and Richards evidence Richards' representation of all four Partnerships.

claims. Ft. Oglethorpe is not scheduled as a creditor.

The debtor's schedules, as amended, list fifteen secured creditors holding claims undisputed in amount totalling $34,290,078.26. Two secured creditors, Paul D. Powsner and Banque Worms, are scheduled as holding contingent, unliquidated, and disputed claims. The debtor does not assign amounts to these disputed claims. Paul D. Powsner filed a claim on May 16, 1989, in the amount of $609,000.

The debtor scheduled eighty-two creditors holding priority and general unsecured claims totalling $9,512,903.89. Twenty-two of these creditors are scheduled as holding priority claims totalling $508,827.43; sixty creditors are scheduled as holding general unsecured claims totalling $9,004,076.46. Claims of five of the general unsecured creditors, including Clinton, West Knoxville and Brunswick, are unscheduled as to amount and are scheduled by the debtor as contingent, unliquidated, and disputed. Circuit City Stores, Inc., a creditor scheduled as holding a disputed claim, filed a proof of claim on August 2, 1989, in the amount of $2,300,000.

On June 5, 1989, the United States Trustee filed his "Appointment of Committee of Unsecured Creditors" designating, inter alia, Clinton as a member of the creditors' committee. Mr. Berlin, representing Clinton, has served as a member of this committee since its inception.

The Partnerships retained the legal services of Marc Richards, an experienced bankruptcy practitioner,[5] prior to the June 16, 1989 adjourned meeting of creditors. Concerning Richards' retention, Mr. Berlin, in his affidavit, states:

> [T]he Partnerships retained Mr. Richards as bankruptcy counsel in mid-June, 1989. At that time, I had [the] Partnerships' bankruptcy file reproduced and given to Mr. Richards. I also inquired as to the timing for filing the Partnerships' proofs of claim. Richards advised me that as

there was no bar date, that the filing of the Partnerships' proofs of claim was not a matter of urgency.

Mr. Berlin's testimony at the September 14, 1989 hearing on the Partnerships' motion is consistent with his affidavit and is not disputed by Mr. Richards.

On August 23, 1989, twenty days after expiration of the August 3, 1989 claims bar date, the Partnerships filed their proofs of claim. These claims are signed on behalf of Clinton, West Knoxville, and Brunswick by "Mark A. Berlin, President Robriste Enterprises, Inc. (General Partner)." The claim filed on behalf of Ft. Oglethorpe is signed by "Mark A. Berlin, President Pudding Enterprises, Incorporated (General Partner)." The claims are filed in the following amounts: Clinton—$1,567,650; Brunswick—$2,364,336; West Knoxville—$2,280,831; and Ft. Oglethorpe—$730,322.

The Partnerships acknowledge that their claims were filed beyond the August 3, 1989 bar date. They contend, however, that the bar date should be extended or, alternatively, that their claims filed August 23, 1989, should be allowed nunc pro tunc to August 3, 1989.

## II

Bankruptcy Code § 1111(a) provides:

> (a) A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.

11 U.S.C.A. § 1111(a) (West 1979).

Bankruptcy Rule 3003(c) provides in material part:

> (c) Filing proof of claim
>
> . . . .
>
> (2) Who must file. Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as

---

**5.** Mr. Richards states in his affidavit that he has practiced bankruptcy law for more than seven years and that "I have participated in some of the larger bankruptcy cases across the country

including: Baldwin–United, LTV, Braniff Airlines, Tacoma Boat Building, Family Health Plans a/k/a Mexicare Health Plans, DRW Realty, Wilson Foods and Spector Red Ball."

disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

(3) Time for filing. The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed.

Fed.R.Bankr.P. 3003(c).

Bankruptcy Rule 3003(c)(2) mandates the filing of proofs of claim by creditors scheduled by the debtor as holding "disputed, contingent or unliquidated" claims. Rule 3003(c)(3) directs the court to fix a bar date for filing claims, but permits the court to extend the bar date for "cause shown."

Bankruptcy Rule 3003(c)(3) must be read in conjunction with Bankruptcy Rule 9006(b). *Vertientes, Ltd. v. Internor Trade, Inc. (In re Vertientes, Ltd.),* 845 F.2d 57, 60 (3d Cir.1988); *Biscayne 21 Condominium Assoc., Inc. v. South Atlantic Financial Corp. (In re South Atlantic Financial Corp.),* 767 F.2d 814, 817 (11th Cir.1985); *Dix v. Johnson (In re Dix),* 95 B.R. 134, 137 (9th Cir.BAP 1988).

Bankruptcy Rule 9006(b)(1) provides:

**(b) Enlargement**

(1) **In General.** Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect.*

Fed.R.Bankr.P. 9006(b)(1) (emphasis added).

Paragraphs (2) and (3) of Rule 9006(b) refer to Rules under which the court has no discretion to extend time, or can extend it only within the limits imposed in those Rules. Rule 3003 is not within the exceptions provided in these paragraphs. "[U]nder Rule 9006(b)(1) a bankruptcy court does have discretion to extend time to file a proof of claim, but only under the circumstances set forth in the two situations described in the Rule." *In re Vertientes, Ltd.,* 845 F.2d at 59.

The term "excusable neglect" is not defined in the Bankruptcy Code. In *In re South Atlantic Financial Corp.,* the Eleventh Circuit stated:

Courts have interpreted "excusable neglect" under Rule 9006(b) and its identically worded predecessor, Rule 906(b), as requiring the movant to show that " 'the failure to timely perform a duty was due to circumstances which were beyond the reasonable control of the person whose duty it was to perform.' " *In re Gem Rail Corp.,* 12 B.R. 929, 931 (Bankr.E.D. Pa.1981) (quoting *In re Manning,* 4 B.C.D. 304, 305 (D.Conn.1978)). Thus, in *In re Underground Utility Construction Co.,* 35 B.R. 588 (Bankr.S.D.Fla. 1983), the court held that a creditor had failed to show "excusable neglect" for filing his claim three days after the bar date where the untimely filing was the result of his failure to mail his claim to the proper address. Similarly, in *In re Oakton Beach & Tennis Club Real Estate Limited Partnership,* 9 B.R. 201 (Bankr.E.D.Wisc.1981), the court held that counsel's reliance on misinformation from a bankruptcy court clerk regarding his duty to file a proof of claim did not amount to excusable neglect; *see also In re Horn Construction & Maintenance, Inc.,* 32 B.R. 87 (Bankr.S.D.Ala.1983), ("misunderstanding" between a creditor and its lawyers which caused its late filing of a proof of claim did not amount to "excusable neglect."); *In re Gem Rail Corp.,* 12 B.R. 929, 931 (Bankr.E.D.Pa. 1981) (creditor's failure to obtain records with which to file timely proof of claim was not excusable neglect where there was no showing by creditor that records could not easily have been obtained). Courts have been most willing to find

excusable neglect where the movant failed to comply with the bar date because, through no fault of its own, it had no notice of that date. *See, e.g., In re Loveridge,* 2 B.C.D. 1597 (Bankr.D.Conn. 1977).

767 F.2d at 817–818.

The Sixth Circuit has not construed "excusable neglect" under Bankruptcy Rule 9006(b).[6] It has, however, in commenting on Fed.R.Civ.P. 6(b), upon which Rule 9006(b) is patterned, observed:[7]

[Rule 6(b)(2) ] would seem to be designed to afford relief to a party whose failure to take timely required steps might be properly classified as "excusable neglect."

*Anderson v. Yungkau,* 153 F.2d 685, 687 (6th Cir.1946), *aff'd* 329 U.S. 482, 67 S.Ct. 428, 91 L.Ed. 436 (1947).

District Judge Neese of this district, in denying a late-filed motion by a plaintiff seeking additional time to respond to a motion for summary judgment, stated:

The plaintiff was required to have submitted any response to the defendant's motion within 5 days after the service thereof. Local Rule 12(b). He could have obtained readily an enlargement of this period had he sought the same within the 5–day period, Rule 6(b)(1), Federal Rules of Civil Procedure; however, because of his failure to do so, this Court can only grant an extension of time within which to respond to the defendant's motion upon a showing of excusable neglect. Rule 6(b)(2), Federal Rules of Civil Procedure.... "[Counsel] should not expect an application under Rule 6(b)(2) to be granted when *failure to act was due to simple inadvertence or a mis-*

*take regarding the content of the rules or unfamiliarity with them...."* 4 Wright & Miller, Federal Practice and Procedure 622, § 1165.

*Sherrod v. Piedmont Aviation, Inc.,* 516 F.Supp. 39, 41 n. 1 (E.D.Tenn.1978) (emphasis added).

Bankruptcy Judge Speer, commenting on excusable neglect within the context of former Bankruptcy Rule 906(b), observed:

Under this rule, the Court may, at its discretion, permit a party to perform an act subsequent to the specified term in which it must otherwise be done if the party can show that the failure to do the act within the time was the result of excuseable [sic] neglect. Although the determination as to whether or not excuseable [sic] neglect is present must be made on a case-by-case basis, it is generally held that if the delay resulted from factors which were within the control of the delinquent party, then the failure is not the result of excuseable [sic] neglect. *Beneficial Finance Co. of Hartford v. Manning (Matter of Manning),* 4 B.C.D. 304 (Bkcy.D.Conn.1978), *In re Grethen,* 14 B.R. 221 (Bkcy.N.D.Iowa 1981).

*In re Scholz,* 57 B.R. 259, 261–62 (Bankr.N. D.Ohio 1986).

■ Clinton, West Knoxville, and Brunswick acknowledge receipt of the April 13, 1989 Notice in ample time to file claims prior to the August 3, 1989 bar date. Further, Marc Richards, counsel for the Partnerships, and Mark Berlin attended creditors' meetings held far in advance of the bar date. Mr. Berlin testified that the Partnerships relied upon counsel to protect their interests; that counsel was provided a

---

**6.** In a case construing Bankruptcy Rule 906(b), the predecessor to Rule 9006(b), the Sixth Circuit found that "[n]on-receipt [of a notice of the claims bar date by the creditor or his attorney] is sufficient ground for excusable neglect." *Bratton v. The Yoder Co. (In re Yoder Co.),* 758 F.2d 1114, 1121 (6th Cir.1985). The facts of *In re Yoder* are clearly inapposite to those confronting the court in the instant proceeding.

**7.** Fed.R.Civ.P. 6(b) provides:
 **Rule 6. Time**
 **(b) Enlargement.** When by these rules or by a notice given thereunder or by order of court

an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect....

Rule 6(b)(2) has remained substantially unchanged since 1946.

copy of the Partnerships' bankruptcy file; and that counsel advised him that the filing of claims was "not a matter of urgency." Mr. Berlin, an attorney and certified public accountant, is an experienced businessman and Mr. Richards is an experienced bankruptcy attorney. This court, on the record before it, cannot find that the failure of Clinton, West Knoxville, and Brunswick to file claims prior to expiration of the bar date was "due to circumstances ... beyond [their] reasonable control." (*In re South Atlantic Financial Corp.*, 767 F.2d at 817 (quoting *In re Manning*, 4 B.C.D. 304, 305 (D.Conn.1978)).

■ Ft. Oglethorpe cannot successfully contend it did not also receive notice of the debtor's Chapter 11 case in time to permit it to file a claim. Mr. Berlin received the April 13, 1989 Notice. He cannot close his eyes to the fact that he is also president of Pudding Enterprises, Inc., general partner of Ft. Oglethorpe. More conclusively, Mr. Berlin appeared on behalf of Ft. Oglethorpe at the adjourned meeting of creditors held May 19, 1989, and employed counsel to represent it in mid-June, 1989. Ft. Oglethorpe's failure to timely file a proof of claim is not excused by the fact that a separate Notice addressed to it was not received by Mr. Berlin. *See In re Terex Corp.*, 45 B.R. 290, 293 (Bankr.N.D.Ohio 1985) (widow who received notice individually deemed also to have received notice in capacity as executrix of deceased husband's estate).

The Partnerships have not established that their failure to timely file proofs of claim is the result of "excusable neglect" under Bankruptcy Rule 9006(b)(1).

### III

■ The Partnerships urge the court to grant their motion on general grounds of equity. They aver that an extension of the bar date will in no way prejudice the debt-

or; that such an extension will not adversely affect the administration of the estate; that there are irregularities in the debtor's schedules; that the delay in filing the Partnerships' proofs of claim was occasioned in part by counsel's withdrawal from his prior law firm;[8] and that the Partnerships have participated in the debtor's Chapter 11 case since its inception.

This court is aware that some courts have examined the prejudicial effect of a late filing in determining the existence of "excusable neglect." *See, e.g., In re Four Seasons Securities Laws Litigation*, 493 F.2d 1288, 1290–91 (10th Cir.1974) (construing excusable neglect under Fed.R.Civ.P. 6(b)(2)); *Dix v. Johnson (In re Dix)*, 95 B.R. 134, 138 (9th Cir.BAP 1988) (applying a liberal definition of excusable neglect under Bankruptcy Rule 9006(b)(1) which factors in equitable considerations); *In re O.P.M. Leasing Services, Inc.*, 35 B.R. 854, 866 (Bankr.S.D.N.Y.1983) (construing excusable neglect under Bankruptcy Rule 9006(b)(1)). This court, however, is persuaded that the better authority is established in opinions out of the United States Courts of Appeal for the Third, Fourth and Eleventh Circuits.

The Third Circuit in *In re Vertientes, Ltd.*, stated:

[U]nder Rule 9006(b)(1), a bankruptcy court does have discretion to extend time to file a proof of claim, but only under the circumstances set forth in the two situations described in the Rule.

. . . .

Rule 3003(c)(3) must be read in conjunction with Rule 9006(b). Under these Rules, the bankruptcy court's discretion to extend time is limited to two situations—requesets [sic] made before the expiration of the originally prescribed time limitation, and where failure to act was due to excusable neglect. *The court has no discretion to grant an extension*

---

**8.** Marc Richards, in his affidavit, states that he was employed by the law firm of Myerson & Kuhn until July 31, 1989; that he and three other partners and associates of Myerson & Kuhn resigned from that firm because of disputes and differences with the remaining part-

ners; that from mid-July through the end of the month his attention was largely diverted in seeking to negotiate an amicable withdrawal from Myerson & Kuhn; and that prior to and after his resignation he was unable to obtain access to the Partnerships' files.

*simply because no prejudice would result, or for any other equitable reason.* 845 F.2d at 59–60 (citations omitted) (emphasis added).

In addition, the Fourth Circuit recently stated:

Bankruptcy Rule 3003(c)(2) expressly requires creditors with a claim scheduled by the debtor as "disputed, contingent or unliquidated" to file a proof of claim. Therefore, regardless of actual notice to the debtor, Congress has established a scheme which requires the filing of creditors' claims within a set time limit to promote certainty and finality. The clear Congressional intent to require filing of valid proofs of claims within the established time limits *precludes any exceptions based on general equitable principles.*

*Maressa v. A.H. Robins Co., Inc.,* 839 F.2d 220, 221 (4th Cir.1988) (citations omitted) (emphasis added).

The Eleventh Circuit is in accord that the focus of "excusable neglect" under Bankruptcy Rule 9006(b)(1) "is on the movant's actions and the reasons for those actions, not on the effect that an extension might have on the other parties' positions." *In re South Atlantic Financial Corp.,* 767 F.2d at 819.

The Sixth Circuit in *Anderson* and Judge Neese in *Sherrod, supra,* discuss "excusable neglect" under Fed.R.Civ.P. 6(b) within the context of the moving parties' "failure to act." There is no hint that either court was willing to go beyond the clear language of the Rule to consider factors other than the movant's actions. For this court to grant the Partnerships' motion, it would need to ignore the language of Rule 9006(b)(1) which authorizes an extension of time "on motion made after the expiration of the specified period ... where the *failure to act* was the result of excusable neglect." (emphasis added).

The court believes the construction afforded Bankruptcy Rule 9006(b)(1) by the Third, Fourth, and Eleventh Circuits to be logically consistent with the plain meaning of the Rule. It further believes the Sixth Circuit's statements in *Anderson* and the district court's statements in *Sherrod* compel a similar construction of Rule 9006(b)(1) by this Court.

 Notwithstanding that this court's sympathies may lie with the Partnerships, it cannot judicially expand Rule 9006(b)(1) to add a ground for extending the time to perform an act within a specified period based upon general equitable considerations. The United States Supreme Court recently stated that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169, 179 (1988). This court is bound by this principle.

For the reasons set forth herein, the court cannot extend the bar date for filing proofs of claim by the Partnerships nor can it enter an order allowing the filing of the Partnerships' claims nunc pro tunc to the August 3, 1989 claims bar date. The Partnerships' motion will be denied.

This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052. An appropriate order will be entered.